USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/15/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VICKIE M. STRINGER,

Plaintiff,

-against-

SIMON & SCHUSTER LLC,

Defendant.

25-cv-670 (MKV)

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Vickie M. Stringer, proceeding *pro se* and *in forma pauperis*, brings this action against Simon & Schuster LLC ("S&S" or "Defendant"), invoking both the Court's federal question and diversity jurisdiction. Plaintiff's action centers on a dispute with Defendant, who has published numerous of her books pursuant to several publishing agreements. Specifically, Plaintiff alleges claims for breach of fiduciary duty under New York law (Count I), fraud and fraudulent concealment under New York law (Count II), willful copyright infringement (Count III), and trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count IV). *See* Fourth Amended Complaint ("FAC") ¶¶ 49-90 [ECF No. 89]. While not articulated as a specific cause of action, the Court also construes the FAC as alleging breach of contract with respect to the various publishing agreements between Plaintiff and Defendant for Plaintiff's books. *See generally* FAC.

Before the Court is Defendant's motion to dismiss the FAC in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). After briefing on the motion was complete, Plaintiff filed a letter seeking leave to file a partial motion for summary judgment with respect to her claim of copyright infringement of one of her works: *Dirty Red*. [ECF No. 96].

For the reasons discussed below, Defendant's motion to dismiss is granted in part and

denied in part. Further, Plaintiff's request for leave to file a partial motion for summary judgment is denied as moot in light of the dismissal of her copyright claim.

## BACKGROUND

The background is derived from the FAC and its exhibits, as well as the six publishing agreements entered into between the parties that are referenced in the FAC and are attached to Defendant's memorandum of law ("Mem.") in support of its motion to dismiss. *See* Mem., Exs. A-F (the "Publishing Agreements") [ECF Nos. 90-1-6].[1] The Court may take notice of the Publishing Agreements, despite not all being attached to the FAC, given they are integral to, and extensively discussed by, the FAC and thus incorporated by reference. *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (courts may rely on documents attached to complaint, incorporated by reference in the complaint, or that are integral to the complaint such as "contracts . . . on which a party's action or defense is based") (citation modified); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (courts may consider the facts alleged in the complaint as well as "documents incorporated by reference in the complaint"); *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (courts may consider document on which complaint heavily relies). Indeed, Exhibit A to the FAC explicitly references the "six publishing agreements," and in turn, reproduces one of them as representative of the others to "minimize duplication and conserve judicial resources." FAC, Ex. A. In so doing, Plaintiff alleges that the other agreements "share the same boilerplate terms," contain "identical clauses governing compensation, royalty accounting, and subsidiary rights," also require "prior written consent for all derivative or new format uses" and "[e]stablish[] Defendant's duty to report and remit royalties accurately and timely." FAC, Ex. A.

[1] The FAC attaches one of the Publishing Agreements as "representative" of the other five. *See* FAC, Ex. A.

**I. Factual Background**[2]

Plaintiff is a published author of many books. FAC ¶ 14; FAC, Ex. A. Between 2003 and 2011, Plaintiff and Defendant entered into six Publishing Agreements that cover nine of her books. *See* FAC, Ex. A; Mem., Exs. A-F. Specifically, on October 20, 2003, the parties entered into a publishing agreement for the books entitled *Imagine This* and *Dirty Red*. FAC, Ex. A; Mem., Ex. A, *see also* FAC, Ex. B. On July 12, 2007, the parties entered into a publishing agreement for the book entitled *Let That Be The Reason*. Mem., Ex. B. On July 17, 2007, the parties entered into an agreement for the book *Still Dirty*. Mem., Ex. C. On April 1, 2009, the parties entered into a publishing agreement for the books *The Reason Why* and *Dirtier Than Ever*. Mem., Ex. D. On May 10, 2011, the parties entered into a publishing agreement for the book *Low Down and Dirty*. Mem., Ex. E. Lastly, on May 16, 2011, the parties entered into a publishing agreement for the books *Crackhead I* and *Crackhead II*. Mem., Ex. F.

The Publishing Agreements, which are properly before the Court in connection with the motion to dismiss because they are incorporated by reference by the FAC, each expressly grant Defendant the "exclusive right to publish [the works] including the right to exercise or license the rights set forth in paragraph 2." *See e.g.*, Mem., Exs. A-F at § 1.[3] Paragraph 2 of each of the Publishing Agreements governs S&S's subsidiary rights and each provide that Defendant shall have the right to exercise or license others to exercise, among other rights, the electronic text rights

---

[2] The Court assumes all well-pleaded factual allegations are true unless "contradicted by other allegations, attached exhibits, or documentary evidence incorporated by the Complaint." *Feibleman v. Trs. of Columbia Univ. in City of New York*, No. 19-CV-4327 (VEC), 2020 WL 882429, at *8 (S.D.N.Y. Feb. 24, 2020) (collecting cases); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) ("[W]e draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto.")

[3] The Publishing Agreements for *Let That Be The Reason* and *Still Dirty* grant Defendant the "the exclusive right to publish the [works] in book, audio and electronic text form, including the right to exercise or license the rights set forth in Paragraph 2." Mem., Exs. B, C.

as defined in Paragraph 34(a) and audio rights as defined in Paragraph 34(b). *See* Mem., Exs. A-F at § 2(a). "[E]lectronic text rights" is defined to mean "the exclusive right to publish, and to authorize others to publish, the verbatim text of the Work [] in whole or in part, in visual form for reading by the human eye, by any non-dramatic electronic, electromagnetic or other means of storage, retrieval, distribution or transmission now known or hereafter devised." Mem., Exs. A-F at § 34(a) (emphasis omitted).[4] The Publishing Agreements define "audio rights" as meaning "the exclusive right to use or adapt, and to authorize others to use or adapt, the Work or any portion thereof as the basis for one or more non-dramatic audio recordings through any method of recording or transmission now known or hereafter devised[.]" Mem., Exs. A-F at § 34(b). The Publishing Agreements also require royalties to be paid to Plaintiff for all copies sold whether the copies are sold as hardcover, paper, electronic text (e-book), or audio. Mem., Exs. A-F at §§ 6(a)-(e).

Plaintiff alleges that she founded Triple Crown Publications in 2002. FAC ¶¶ 20-24. She alleges that Defendant and Triple Crown Publications executed a separate Sales and Distribution Services Agreement on December 20, 2011. FAC ¶ 29. Plaintiff alleges that Defendant declared the agreement "null and void" after Defendant learned that Triple Crown Publications was no longer in existence. FAC ¶ 29; FAC, Ex. F. Plaintiff alleges that Defendant nonetheless "continued exploiting her works." FAC ¶ 30.

In response, Plaintiff alleges that she retained an attorney to address Defendant's conduct, which led to a negotiated settlement in 2014 ("2014 Settlement"). FAC ¶ 31, FAC, Ex. B. The 2014 Settlement, which is attached as an exhibit to the FAC, provided for Defendant to pay

[4] The Court notes that four of the six Publishing Agreements, omit the word "verbatim" when defining the electronic text rights. *See* Mem., Exs. A, D, E, F.

Plaintiff $25,000 and clarified that "any advance royalties or other sums previously paid" to Plaintiff under the Publishing Agreements "shall be annulled and shall not be applied to reduce or 'zero out' any amounts (i.e. royalites) paid to you." FAC, Ex. B. The 2014 Settlement also clarified that the October 20, 2003 Publishing Agreement applied to the books *Imagine This* and *Dirty Red*.[5] As part of the 2014 Settlement, Plaintiff also released any causes of action arising prior to 2014 Settlement Agreement, "including without limitation any and all claims relating to the termination of the Sales & Distribution Services Agreement, dated as of December 20, 2011." FAC, Ex. B. Plaintiff nonetheless alleges that Defendant has continued the "accounting manipulation the settlement was designed to stop" and has engaged in other "violations" since the 2014 Settlement. FAC ¶¶ 33-35.

Specifically, with respect to her breach of fiduciary duty claims, Plaintiff alleges that Defendant engaged in "accounting fraud" in breach of its fiduciary obligation to her by creating a false "deferred" column in its royalty statements, concealing "revenue streams from subsidiary rights exploitation," exploiting her works across platforms, and distributing her works in unauthorized formats, among other violations. FAC ¶¶ 50-52.

With respect to her claims of fraud and fraudulent concealment, Plaintiff repeats the above charges but also alleges that Defendant materially deceived her in an April 16, 2025 email from Nicole Bond, an employee of Defendant, who emailed her that "[t]here are no active subsidiary rights licenses for any of your titles." FAC ¶¶ 60-64. Plaintiff alleges the email statement was false because Defendant had released an audiobook thirteen days earlier. FAC ¶ 61.

In support of her copyright infringement claim, Plaintiff alleges that Defendant has

[5] The October 20, 2023 Agreement itself applies to *Imagine This* and *Untitled Work*, presumably because the title *Dirty Red* had yet to be determined. FAC, Ex. A; Mem., Ex. A.

infringed her copyrights by, among other things, reproducing her books in print, digital, and audio formats. FAC ¶¶ 70-73. She also appears to allege that the Publishing Agreements are no longer operative, pointing to the email in which Defendant nullified the stand-alone Sales and Distribution Services Agreement between Defendant and Triple Crown Publications. FAC ¶¶ 72, 74.

As for her trademark infringement claim, Plaintiff alleges that Defendant, without consent, has used her Triple Crown Publications mark from 2012 to present. FAC ¶¶ 80-90.

**II. Procedural History**

Plaintiff initiated this action on January 21, 2025, [ECF No. 1], and thereafter moved *ex parte* for a temporary restraining order ("TRO"). [ECF No. 24]. Defendant subsequently appeared and filed an answer, [ECF No. 23], as well as an opposition to the motion for a TRO. [ECF No. 29]. The Court denied the TRO. [ECF No. 32]. Thereafter, Plaintiff filed a First Amended Complaint, [ECF No. 37], and, in response, Defendant filed a pre-motion letter outlining the basis for its contemplated motion to dismiss. [ECF No. 52]. Plaintiff then, without leave of Court, filed a Second Amended Complaint ("SAC"). [ECF No. 53]. The Court issued an Order explaining that the SAC was filed without leave as required by Federal Rule of Civil Procedure 15, but nonetheless granted Plaintiff leave to file an amended complaint given Defendant's anticipated motion to dismiss. [ECF No. 62]. In so doing, the Court warned that **"[t]his will be Plaintiff's last opportunity to amend in response to any issue raised in the parties' pre-motion letters."** [ECF No. 62 (emphasis in original)]. Thereafter, Plaintiff filed her self-styled Third Amended Complaint ("TAC"), [ECF No. 64], and sought leave to file a renewed motion for a TRO. [ECF No. 65]. The Court granted Plaintiff leave to file her renewed motion for a TRO. [ECF No. 67], and Defendant filed its motion to dismiss the TAC. [ECF No. 68]

The Court subsequently denied Plaintiff's renewed request for a TRO, and in so doing,

construed the TAC as alleging trademark infringement claims. [ECF No. 84]. In light of this holding, Defendant filed a pre-motion letter seeking leave to dismiss the trademark infringement claim that the Court construed Plaintiff as raising. [ECF No. 85]. The Court granted Defendant leave to move to dismiss the claim, and for the sake of efficiency, ordered that Defendant file a new unified motion to dismiss all Plaintiff's claims. [ECF No. 87]. However, the Court further granted Plaintiff a final opportunity to amend in light of Plaintiff's pre-motion letter and explained that "**Plaintiff is on notice that this will be her last opportunity to amend the complaint to cure any deficiency identified in the pre-motion letter at docket entry number 85.**" [ECF No. 87 (emphasis in original)].

Plaintiff filed the operative FAC. [ECF No. 89]. Thereafter, Defendant filed its motion to dismiss the FAC in its entirety. [ECF No. 90]. In connection with its motion, Defendant has filed a memorandum of law and attached the six executed Publishing Agreements between Plaintiff and Defendant that the FAC references. *See* Mem., Exs. A-F [ECF No 90-1-6]. Plaintiff has filed her opposition ("Opp'n"), with attached exhibits, [ECF No. 91], and Defendant has filed its reply ("Reply"). [ECF No. 94]. After briefing was complete, Plaintiff subsequently filed a letter seeking leave to file a partial motion for summary judgment with respect to her claim of copyright infringement of *Dirty Red*. [ECF No. 96].

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* (citing *Twombly*, 550 U.S. at 556). While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Under Federal Rule of Civil Procedure 9(b), fraud claims are subject to a heightened pleading standard and must be plead "with particularity." Fed. R. Civ. P. 9(b); *In Re Archegos 20A Litig.*, 156 F.4th 108, 116 (2d Cir. 2025). Rule 9(b) requires that a plaintiff "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016) (citation omitted). Further, a Plaintiff must adequately plead facts that give rise to a "strong inference of fraudulent intent." *Morgulis v. Bus Patrol America, LLC*, No. 25-1224, 2026 WL 603607, at *2 (2d Cir. Mar. 4, 2026) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).

Where, as here, a plaintiff is proceeding *pro se*, the pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (citation modified). Thus, to survive a Rule 12(b)(6) motion to dismiss, even a "*pro se* complaint must state a plausible claim for relief," *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013), supported by "specific and detailed factual allegations, not stated in wholly conclusory terms." *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000).

## DISCUSSION

### I. Plaintiff Fails To Plausibly State A Breach of Contract Claim

While Plaintiff has not specifically alleged a breach of contract claim, the Court construes the FAC as raising one based on the numerous purported breaches of the Publishing Agreements the FAC asserts. Defendant moves to dismiss Plaintiff's breach of contract claim to the extent she pled one. Mem. at 10-11.

To state a claim for breach of contract under New York law,[6] a plaintiff must allege (1) the existence of a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages resulting from defendant's breach. *34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52, 198 N.E.3d 1282, 1287, 178 N.Y.S.3d 1, 2 (N.Y. 2022); *Hausen v. N. Fork Radiology, P.C.*, 171 A.D.3d 888, 892, 98 N.Y.S.3d 224, 229 (2d Dep't 2019); *see also Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Both New York law and federal pleading standards mandate that a plaintiff's complaint "identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *Diaz v. Dora Maar USA Inc.*, No. 25-CV-6868 (LJL), 2026 WL 880515, at *5 (S.D.N.Y. Mar. 31, 2026) (quoting *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015)); *Hempel v. Wise*, 224 A.D.3d 574, 575, 203 N.Y.S.3d 618, 619-20 (1st Dep't 2024). Moreover, "[a] breach of contract claim must be dismissed where the unambiguous terms of the contract do not support a plaintiff's claim." *Spinelli*, 96 F. Supp. 3d at 131.

The vast majority of the alleged breaches Plaintiff identifies cannot support a breach of

---

[6] For all of Plaintiff's state law claims, both she and Defendant assume that New York law governs by stating as much and relying on New York law in their briefing. Accordingly, the Court assumes that New York law governs for Plaintiff's state law claims. *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) ("The parties' briefs assume that New York law controls, and such implied consent . . . is sufficient to establish choice of law.") (quoting *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000)).

contract claim because the challenged conduct is expressly authorized by the Publishing Agreements. Indeed, construed liberally, the FAC alleges that Defendant breached, or exceeded the scope of, the Publishing Agreements by electronically distributing her works without her consent, distributing her works across multiple platforms and in unauthorized formats, and "actively exploiting" her works. *See* FAC ¶¶ 37-39, 52(c), 52(d), 52(f). In her opposition, Plaintiff argues that Defendant exceeded the scope of the Publishing Agreement's by "exercising electronic rights," releasing audio books, and distributing across digital platforms without consent. Opp'n at 7-9, 13-14.

As an initial matter, Plaintiff fails to articulate the specific provisions of any Publishing Agreement that Defendant purportedly has breached. This deficiency in the FAC is an independent basis for dismissal. *See Phillips v. Google LLC*, No. 24-CV-5742 (VF), 2025 WL 1795894, at *3 (S.D.N.Y. June 30, 2025) (failure to identify terms of contract breached by defendant necessitates dismissal, and collecting cases); *see also Spinelli*, 96 F. Supp. 3d at 132.

Moreover, her claims are foreclosed by the plain language of the Publishing Agreements, which afford Defendant the specific rights that Plaintiff complains Defendant has exercised. Section 1 of each of the Publishing Agreements grants Defendant the "exclusive rights to publish [the works] including the right to exercise or license the rights set forth in paragraph 2." Mem., Exs. A-F §§ 1, 2.[7] In turn, Paragraph 2 of each of the Publishing Agreements governs Defendant's subsidiary rights and provide that Defendant shall have the right to exercise, among other rights, the electronic text rights as defined in Paragraph 34(a) and audio rights as defined in Paragraph

[7] Again the Court notes that Section 1 of the Publishing Agreements for *Let That Be The Reason* and *Still Dirty* grant Defendant the "the exclusive right to publish the [works] in book, audio and electronic text form, including the right to exercise or license the rights set forth in Paragraph 2." Mem., Exs. B, C. But the broad language in the other Publishing Agreements similarly grants Defendant the right to publish Plaintiff's other works in electronic and audio formats.

34(b). Mem., Exs. A-F at § 2(a). And those rights include the right to publish, or to authorize others to publish, Plaintiff's covered works either electronically or in audio form. *See* Mem., Exs. A-F §§ 34(a)-(b). In sum, these provisions unambiguously permit Defendant the right to license her works across platforms and in the formats—electronically and audio book—that Plaintiff claims are unauthorized, without specifying why. There is nothing in the Publishing Agreements that conditions on Plaintiff's consent Defendant's right to license the works to third parties or to publish them in the electronic/audio format. Accordingly, Plaintiff's allegations of breach of contract on these bases are flatly contradicted by the Publishing Agreements. *See Spinelli*, 96 F. Supp. 3d at 133.

Plaintiff also raises the meritless argument in her opposition that there is no contract governing her book *Dirty Red*. Opp'n at 6-9, 13-14. Plaintiff appears to base this on the fact that the October 20, 2003 Publishing Agreement she attaches covers *Imagine This* and *Untitled Work*. FAC, Ex. A. But this argument is meritless and belied by her own exhibits, namely the 2014 Settlement, which expressly confirms that that the October 20, 2003 Publishing Agreement covers *Dirty Red*. *See* FAC, Ex. B; *see also L-7 Designs*, 647 F.3d at 422 ("[W]e draw all facts—which we assume to be true unless contradicted by more specific allegations or documentary evidence—from the Complaint and from the exhibits attached thereto.").

In addition, Plaintiff, in conclusory fashion, alleges that Defendant has violated "both [the Publishing Agreements and the 2014 [S]ettlement terms" by creating "false 'deferred' columns in royalty statements to manipulate earnings." FAC ¶ 52(a). Elsewhere, Plaintiff alleges that in creating these "unauthorized 'deferred' columns in royalty statements" Defendant was "effectively reinstating the accounting manipulation" that was barred by the 2014 Settlement. FAC ¶¶ 32-33. As part of the 2014 Settlement, Defendant agreed that any advance royalties or other sums

previously paid to or on behalf of [Plaintiff] under the above Agreements shall be annulled and shall not be applied to reduce or "zero out" any amounts (i.e., royalties) payable to you." FAC, Ex. B.

Plaintiff entirely fails to allege in any way how Defendant's alleged use of "deferred columns" in royalty statements was somehow "false," or constitutes a breach of the Publishing Agreements or 2014 Settlement, let alone resulted in an underpayment of royalties to which she was entitled. The FAC rests on mere speculation that a "deferred column," with no explanation as to what that represents, is an improper end-run of the 2014 Settlement. The 2014 Settlement simply does not speak to the issue of deferred payment and Plaintiff, without more, has failed to plausibly allege a breach on such thin conclusory allegations. *See Planete Bleue Television, Inc. v. A&E Television Networks, LLC*, No. 16-cv-9317 (PGG), 2018 WL 10579873, at *12 (S.D.N.Y. Sept. 19, 2018) (naked allegation of "delayed royalty payments" were too conclusory to support breach of contract without further factual allegations concerning what payments were due under the contract and when they had to be made); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 468 (S.D.N.Y. 2016), *aff'd*, 759 F. App'x 42 (2d Cir. 2019) ("A breach of contract claim will be dismissed . . . as being too vague and indefinite, where the plaintiff fails to allege, in nonconclusory fashion, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated.") (citation omitted); *Marino v Vunk*, 39 A.D.3d 339, 340, 835 N.Y.S.2d 47 (1st Dep't 2007) ("Vague and conclusory allegations are insufficient to sustain a breach of contract cause of action").

Lastly, Plaintiff also appears to allege that Defendant breached the Publishing Agreements by "hiding revenue streams from subsidiary rights exploitation." FAC ¶¶ 42, 52(b). But as discussed, the Publishing Agreements explicitly permit Defendant to license subsidiary rights to

third parties. *See* Mem., Exs. A-F § 2. In any event, while Plaintiff entirely fails to specify what provisions of the Publishing Agreements this conduct purportedly violated, the Court construes the FAC liberally as alleging that Defendant failed to remit all royalties due under the Publishing Agreements. But Plaintiff offers only conclusory allegations to support this claim. At best, Plaintiff alleges she uncovered alleged underpayment based on an inadvertently sent email from an S&S employee on October, 24 2024, which she claims showed Defendant hiding revenue. FAC ¶¶ 42, 52(b) (alleging October 24, 2024 email attached as Exhibit I revealed "concealed financial records" showing Defendant hid revenue streams). However, the exhibit that Plaintiff references in support of her conclusory allegation concerns sale *projections* for the works *Let That Be The Reason*, *Dirtier Than Ever*, and *The Reason Why* that *predate* the consummation of the Publishing Agreements for those works. *See* FAC, Ex. I. In short, this exhibit does not support, in any way, Plaintiff's otherwise conclusory allegation that Defendant failed to remit any actual royalties that it had collected. Accordingly, Plaintiff's conclusory allegation, belied by her own exhibit, cannot plausibly support a claim for a breach of contract. *See Feibleman*, 2020 WL 882429, at *8 (court need not accept conclusory allegation contradicted by attached exhibits); *accord. L-7 Designs*, 647 F.3d at 422; *see also Planete Bleue Television*, 2018 WL 10579873, at *12 (conclusory allegation that royalty payments "were routinely delayed" is insufficient absent supporting factual allegations).

In short, Plaintiff has failed to plausibly allege a breach of contract claim. Her claims are invariably inadequately plead or flatly foreclosed by the specific terms of the Publishing Agreements. Accordingly, her breach of contract claims, to the extent she is attempting to assert such claims, are dismissed.

**II. Plaintiff Fails To Plausibly State A Claim For Breach of Fiduciary Duty**

Plaintiff separately alleges that Defendant breached its fiduciary duty on the same grounds she asserts for her breach of contract claim. FAC ¶¶ 49-57. Defendant moves to dismiss this claim because Plaintiff has failed to allege the existence of a fiduciary relationship. Mem. at 4-5.

As an initial matter, Plaintiff's claim for breach of fiduciary duty is dismissed on the ground that it is "duplicative" of her deficient "breach of contract" claim." *Vill. of Kiryas Joel v. Cnty. of Orange*, 144 A.D.3d 895, 898, 43 N.Y.S.3d 51, 57 (2d Dep't 2016). Indeed, the bases for fiduciary breaches are all premised on purported violations of the Publishing Agreements and the 2014 Settlement. *See* FAC ¶¶ 52-56.

In any event, and to the extent Plaintiff's breach of fiduciary duty claim is premised on conduct beyond purported breaches of the Publishing Agreements and her 2014 Settlement, her claim must be dismissed because Plaintiff has failed to allege the existence of a fiduciary relationship—*i.e.*, a special relationship with Defendant that transcends an ordinary, arms-length business relationship.

To allege a breach of fiduciary duty under New York law, a plaintiff must allege "'(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct.'" *Vill. of Kiryas Joel*, 144 A.D.3d at 898, 43 N.Y.S.3d at 57 (quoting *Varveris v. Zacharakos*, 110 A.D.3d 1059, 973 N.Y.S.2d 77 (2d Dep't 2013)); *see also EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19-22, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005). A fiduciary relationship "is grounded in a higher level of trust than normally present in the marketplace between those involved in arm's length business transactions." *EBC I*, 5 N.Y.3d at 19; *see also Mid-Island Hosp., Inc. v. Empire Blue Cross & Blue Shield*, 276 F.3d 123, 130 (2d Cir. 2002) (under New York law the parties to an arm's length commercial transaction do not

assume a fiduciary relationship "absent extraordinary circumstances") (citation omitted). A conventional business relationship "without more" is not converted into a fiduciary relationship "by mere allegation." *Oursler v. Women's Interart Ctr.*, 170 A.D.2d 407, 407, 566 N.Y.S.2d 295, 297 (1st Dep't 1991); *see also PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 498 (S.D.N.Y. 2017) (arm's length commercial transaction does not give rise to fiduciary relationship). Thus, to ascertain whether a fiduciary relationship exists, one looks to any applicable contract and the relationship more generally between the parties. *EBC I*, 5 N.Y.3d at 19-20 ("[I]t is fundamental that fiduciary liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.") (citation modified).

Plaintiff's fiduciary duty claim must be dismissed because she fails to plausibly allege a relationship between herself and Defendant that transcends an ordinary business relationship between author and publisher. *See Amy Axelrod, Inc. v. Simon & Schuster, Inc.*, No. 07-cv-891 DLC, 2007 WL 2412257, at *7 (S.D.N.Y. Aug. 27, 2007) (no breach of fiduciary duty claim where plaintiffs alleged nothing "more than a conventional business relationship between an author and her publisher"); *Archie Comic Publications, Inc. v. DeCarlo*, 141 F. Supp. 2d 428, 432 (S.D.N.Y. 2001) (obligations assumed by publisher "in an exclusive licensing contract are not, as a matter of law, fiduciary duties") (quoting *Mellencamp v. Riva Music Ltd.*, 698 F. Supp. 1154, 1159 (S.D.N.Y. 1988)); *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Pub. Co.,* 33 A.D.2d 766, 766-67, 306 N.Y.S.2d 599 (1st Dep't 1969), *aff'd*, 30 N.Y.2d 34, 281 N.E.2d 142 (1972) (no fiduciary relationship between author and publisher in a purely commercial relationship). Plaintiff identifies no special relationship beyond the Publishing Agreements between the parties and fails to allege how those commercial transactions have created a higher level of trust.

While Plaintiff asserts that "[u]nder the [P]ublishing [A]greements" Defendant acted as her

"agent, and fiduciary," FAC ¶ 50, this "mere allegation" is insufficient to plausibly allege a fiduciary relationship. *See Oursler*, 170 A.D. 2d at 407, 566 N.Y.S.2d at 297; *PetEdge*, 234 F. Supp. 3d at 498 (threadbare recitations of the legal elements to establish fiduciary duty are insufficient).[8]

Accordingly, Plaintiff fails to state a breach of fiduciary duty claim because she has failed to plausibly allege that a fiduciary relationship existed between herself and Defendant and because it is duplicative of her deficient breach of contract claim. Thus, her breach of fiduciary duty claim is dismissed.

**III. Plaintiff Fails To Plausibly State A Claim For Fraud And Fraudulent Concealment**

Defendant moves to dismiss Plaintiff's fraud and fraudulent concealment claim on related grounds: (1) Plaintiff failed to plead the elements of her fraud and fraudulent concealment claim; and (2) Plaintiff's fraud claim is duplicative of her breach of contract claim. Mem. at 5-7; 11-12. For the reasons discussed below, Plaintiff has not sufficiently pled all of the elements of a fraud or fraudulent concealment claim under New York law with particularity, and her claim is otherwise duplicative of her breach of contract claim.

While Plaintiff does not specify whether her claims sound in fraudulent misrepresentation or fraudulent concealment, the standards are largely overlapping under New York law, and Plaintiff's claims fail under either standard. To plead a claim of fraudulent misrepresentation under New York law, a plaintiff must plausibly plead (1) a misrepresentation or omission of material fact that (2) was made by defendant with knowledge of its falsity and with an intent to defraud, (3) reasonable reliance on the part of the plaintiff and (4) resulting damage to the plaintiff.

[8] In her opposition, Plaintiff appears to suggest Defendant acted as her agent because it created sublicense agreements with third parties. Opp'n at 10. But as Defendant points out, the Publishing Agreements provide it with this explicit contractual right. Reply at 7-8; *see also* Mem., Exs. A-F §§1, 2.

*See New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318, 662 N.E.2d 763, 769, 639 N.Y.S.2d 283, 289 (1995); *Basis Yield Alpha Fund (Master) v. Goldman Sachs Grp., Inc.*, 115 A.D.3d 128, 135, 980 N.Y.S.2d 21, 27 (1st Dep't 2014); *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). A plaintiff alleging fraudulent concealment, must, in addition to the above elements, allege that the defendant had a duty to disclose material information and failed to do so. *Spencer v. Green*, 42 A.D.3d 521, 522, 842 N.Y.S.2d 445, 446 (2d Dep't 2007); *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 376, 754 N.Y.S.2d 245, 250 (1st Dep't 2003).

Plaintiff's claim, whether it be for fraudulent misrepresentation or fraudulent concealment, is largely premised on an April 16, 2025 email from Defendant's employee that stated there were no active subsidiary rights licenses for Plaintiff's works. *See* Opp'n at 11-13; *see also* FAC ¶¶ 60-63. Plaintiff claims this email was false because her works were distributed across multiple platforms days earlier, Opp'n at 12, thereby satisfying the first element.

However, Plaintiff's claim falls woefully short of the heightened pleading standard under Rule 9(b), with respect to the other elements of a fraud claim. She does not specifically plead facts that give rise to an inference that Defendant had an intent to defraud, *see Phoenix Companies, Inc. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 601 (S.D.N.Y. 2021) (Rule 9(b) requires allegations that provide "strong inference" of intent to defraud), that the misrepresentation caused her damage, or that she justifiably relied on this email to her detriment.

At best, Plaintiff alleges in conclusory fashion that Defendant intended that she rely on the statement "by ceasing investigation into Defendant's unauthorized exploitation." FAC ¶¶ 62-63. Nowhere does she allege in what way she relied on the alleged misrepresentation or how any such reliance caused her harm. *See Roumi v. Guardian Life Ins. Co. of America*, 191 A.D.3d 911, 913, 142 N.Y.S.3d 571 (2d Dep't 2021) (dismissing fraud claims where plaintiffs failed to adequately

allege justifiable reliance on allegedly fraudulent statement). Moreover, any justifiable reliance on the statement to cease investigation would defy logic given Plaintiff initiated this case roughly three months before the email, on January 21, 2025, complaining of "unauthorized distribution" of her works. [*See* ECF No. 1 at 15]. Accordingly, her own pleadings reveal that she did not rely on the alleged misstatement to her own detriment as she was already well under way with her lawsuit and investigation concerning Defendant's allegedly unauthorized use of her works. And noticeably absent from the complaint are allegations that any misrepresentations or omissions by Defendant caused damage to Plaintiff. *See Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415 (2d Cir. 2006) (New York law requires that reliance on representation results in damage to plaintiff).[9]

Plaintiff's remaining bases for her fraud claim are otherwise duplicative of her failed breach of contract claim since they arise out of the same facts that underlie that flawed claim. *See* FAC ¶ 64 (reiterating her allegations that Plaintiff failed to properly remit royalties, disclose subsidiary rights "exploitation," and hid revenue streams). It is black letter law that a fraud claim will not lie under New York law if it arises "out of the same facts as plaintiff's breach of contract claim." *Telecom Intl. Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (citation omitted). Accordingly, these bases for Plaintiff's fraud or fraudulent concealment claim are duplicative of those on which she predicates her breach of contract claim and, as such, the fraud claims also must be dismissed. *See Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 305, 765 N.Y.S.2d 575, 589 (1st Dep't 2003) (dismissing fraud claim as duplicative of

---

[9] While not addressed in her opposition, the FAC also alleges that Defendant committed fraud by "false[ly] represent[ing] to the Bankruptcy Court (2017) that Plaintiff's contracts were 'worthless' while simultaneously profiting from them." FAC ¶ 64(d). But, for the same reasons discussed above, Plaintiff has failed to meet the heightened pleading standards to satisfy a claim for fraud on this basis. Indeed, Plaintiff has failed to plausibly allege how she relied to her detriment on an allegedly false statement made to the Bankruptcy Court, a third party. *See Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829, 59 N.E.3d 485, 493 (2016) ("We, therefore, decline to extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff.").

contract claim); *Amy Axelrod*, 2007 WL 2412257, at *5-6 (dismissing fraud claim duplicative of breach of contract claim).

In sum, Plaintiff has failed to plausibly allege with particularity any claim for fraud and/or fraudulent concealment, and her claim is otherwise duplicative of her flawed breach of contract claim. Accordingly, her fraud and/or fraudulent concealment is dismissed.

**IV. Plaintiff Fails To Plausibly State A Claim For Copyright Infringement**

Plaintiff alleges that Defendant has infringed her copyright for the works published pursuant to the Publishing Agreements. FAC ¶¶ 69-78. Defendant moves to dismiss Plaintiff's copyright infringement claim because the Publishing Agreements expressly grant Defendant a license for the conduct she now challenges. Mem. at 7-8. Because Defendant's challenged actions fall within the scope of a valid license pursuant to the Publishing Agreements, Plaintiff's copyright claim must be dismissed.

To establish a claim for copyright infringement, a plaintiff must demonstrate "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 153 (2d Cir. 2024) (quoting *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020). However, "it is well established that use of a copyrighted work within the scope of a valid license is non-infringing as a matter of law." *Spinelli*, 96 F. Supp. 3d at 128. Indeed, "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998). Thus, dismissal of a copyright infringement claim is proper "where a contract underlying the suit clearly and unambiguously demonstrates the existence of the defendant's license to exploit the plaintiff's copyrights and where plaintiff has not shown any limitation on that license." *Bus. Casual Holdings, LLC v. YouTube,*

*LLC*, No. 21-cv-3610 (JGK), 2022 WL 837596, at *3 (S.D.N.Y. Mar. 21, 2022) (quoting *Spinelli*, 96 F. Supp. 3d at 121); *Great Minds v. FedEx Off. & Print Servs., Inc.*, No. 16-cv-1462 (DRH) (ARL), 2017 WL 744574, at *3 (E.D.N.Y. Feb. 24, 2017), *aff'd*, 886 F.3d 91 (2d Cir. 2018).

Plaintiff alleges Defendant infringed her copyrighted works by reproducing them in "print, digital and audio formats," "[d]istributing copies across sixteen platforms," "creating unauthorized derivative works including audiobooks, box sets, and collections," "displaying Plaintiff's works on commercial platforms," and releasing an audiobook on April 29, 2025. FAC ¶ 73. However, as discussed with respect to Plaintiff's breach of contract claims, the Publishing Agreements expressly authorize the complained of conduct. The Publishing Agreements grant Defendant the broad right to publish and sublicense the works in print, electronic and audio formats across platforms. *See* Mem., Exs. A-F §§ 1, 2, 34.

Plaintiff's arguments to the contrary are entirely without merit. First, Plaintiff again mounts the meritless argument that there is no contract governing her book *Dirty Red*. Opp'n at 6, 14. Plaintiff additionally appears to argue that the Publishing Agreements were repudiated based on a January 13, 2012 email. Opp'n at 14; *see also* FAC, Ex. F. However, as noted in the background and as her pleading makes clear, this email simply reflects that Defendant repudiated an entirely separate December 2011 Sales and Distribution Services Agreement with Triple Crown Publications after it learned Triple Crown Publications was no longer in existence. FAC ¶ 29; FAC, Ex. F.

Plaintiff next contends that her "pre-2007" titles, *Imagine This* and *Dirty Red*, which are covered by the October 20, 2003 Publishing Agreement, *see* Mem., Ex. A., do not afford electronic rights, but rather grant Defendant rights in "book form" only. Opp'n at 5, 8-9, 14. However, this is belied by the fact that the October 20, 2003 Publishing Agreement, which is incorporated by

reference and attached to the FAC, permits Defendant to "exercise" or "license" rights in those works including "the electronic text rights as defined in Paragraph 34(a)" and the "audio rights as defined in Paragraph 34(b)." Mem., Ex. A at § 2(a). As defined in the agreement, those rights permit Defendant to publish electronic text and audio versions of *Imagine This* and *Dirty Red*. *See* Mem., Ex. A at § 34(a) (electronic text rights include the "exclusive right to publish and to authorize others to publish the text of the Work . . . in visual form for reading by the human eye, by any . . . electronic . . . means of storage, retrieval distribution or transmission now known or hereafter devised"); Mem., Ex. A at § 34(b) (audio text rights include the "exclusive right to use or adapt, and to authorize others to use or adapt, the Work or any portion thereof as the basis for one or more non-dramatic audio recordings through any method of recording or transmission now known or hereafter devised"). This broad language permitting publication by electronic distribution and audio recordings, as well as any method "hereafter devised" plainly affords Defendant authorization to publish or license the pre-2007 works in the complained of formats. *See HarperCollins Publishers LLC v. Open Rd. Integrated Media, LLP*, 7 F. Supp. 3d 363, 373 (S.D.N.Y. 2014) (rejecting argument that publishing contract granted right to publish in "book form" only since the contract "specifically provid[ed] for anticipated electronic means that might be 'hereafter invented[]'").

Accordingly, since the alleged infringing conduct is entirely within the scope of rights afforded to Defendant under the Publishing Agreements, Plaintiff's copyright infringement claim is dismissed.

**V. Plaintiff Plausibly States A Claim For Trademark Infringement**

Plaintiff separately alleges trademark infringement and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). FAC ¶¶ 80-90. Specifically, Plaintiff

alleges Defendant infringed her unregistered mark in "Triple Crown Publications" by using the mark without authorization in connection with publishing Plaintiff's works. FAC ¶¶ 80-90.

Section 1125(a) "protects unregistered trademarks from infringement." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) (citation omitted). To state a claim for trademark infringement or false designation under Section 1125(a), a plaintiff must allege that he or she holds a valid mark entitled to protection, and that the defendant's unauthorized use of a similar mark is likely to cause confusion. *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 115 (2d Cir. 2006); *Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC*, 770 F. Supp. 3d 625, 635 (S.D.N.Y. 2025); *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015).

Defendant raises a single argument for dismissal asserting that its use of the Triple Crown Publications mark "is contractually authorized" by the Publishing Agreements. Mem. at 8-10. Specifically, Defendant points to the contractual provision in the Publishing Agreements that provides that publication "shall be in any edition and under any imprint of Publisher or its affiliates that Publisher elects." Mem., Exs. A-F § 16(a). While Defendant cites caselaw that trademark infringement cannot stand where an authorized user uses the mark as authorized, *see* Mem. at 9 (citing *Pan Am. World Airways, Inc. v. Vetements, Inc.*, No. 08-cv-5480 RJH, 2010 WL 3632732, at *1 (S.D.N.Y. Sept. 16, 2010)), Defendant has entirely failed to explain how Section 16(a) of the Publishing Agreements grants it authorization to use Plaintiff's alleged trademark in Triple Crown Publications. The cited language permits Defendant to use only "any imprint of [Defendant] or its affiliates that [Defendant] elects." Mem., Exs. A-F § 16(a). While the Court notes that Defendant and Triple Crown Publications entered into a Sales & Distribution Agreement on December 20, 2011, Plaintiff alleges that Defendant sent a letter declaring that agreement "null and void" in

January 13, 2012 after it learned that Triple Crown Publication was no longer in existence. *See* FAC ¶ 29; FAC, Ex. F. Thus, there appears to be no basis for Defendant's unexplained assertion that the Triple Crown Publication mark is an imprint of Defendant or one of Defendant's affiliates within the meaning of Section 16(a) of the Publishing Agreements.

Accordingly, Defendant's sole basis for dismissal at this stage is unavailing and Plaintiff's claim for trademark infringement will not be dismissed on this ground.

**VI. Timeliness**

Defendant argues that any alleged contractual breaches that accrued more than six years before the filing of Plaintiff's complaint on January 21, 2025 are barred by New York's six-year statute of limitations for such claims. Mem. at 12-13. Section 213 of the New York Civil Practice Law and Rules ("NY CPLR") provides a six-year statute of limitations for breach of contract claims. *See* NY CPLR § 213(2). Under New York law, "the default accrual rule for breach of contract causes of action is that the cause of action accrues when the contract is breached" regardless of whether "the injured party may be ignorant of the existence of the wrong or injury." *Deutsche Bank Nat'l Tr. Co. Tr. for Harborview Mortg. Loan Tr. v. Flagstar Cap. Markets Corp.*, 32 N.Y.3d 139, 145, 112 N.E.3d 1219, 1222, 88 N.Y.S.3d 96 (2018).

Defendant also argues that any claim for copyright infringement that accrued more than three years before the filing of Plaintiff's complaint is barred by the applicable statute of limitations. Mem. at 12-13. The statute of limitations for a claim of copyright infringement is three years and each act of infringement triggers a new limitations period. 17 U.S.C. § 507(b); *Atticus Ltd. Liab. Co. v. Dramatic Publishing Co.*, 145 F.4th 257, 273 (2d Cir. 2025).[10]

Plaintiff asserts that the limitations period on all her claims predicated on any conduct that

[10] Defendant makes no argument with respect to the timeliness of Plaintiff's trademark infringement claim.

predates these limitations periods should be equitably tolled because she only discovered Defendant's "fraud" on October 24, 2024 and Defendant fraudulently concealed the extent of its misconduct until that point. Opp'n at 13.

"[A] statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period'; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir.1999)); *see also Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("Under New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.") (citation modified).

Here, Plaintiff's sole basis for seeking equitable tolling is the contention that Defendant somehow concealed its actions until the October 24, 2024 email inadvertently revealed Defendant's misconduct. But Plaintiff has not properly alleged any sufficiently particularized act of fraudulent concealment by Defendant outside of the limitations period beyond her own conclusory assertions. Even setting this glaring absence aside, as previously discussed, the October 24, 2024 email simply relates to internal sales projections for the works *Let That Be The Reason*, *Dirtier Than Ever*, and *The Reason Why* that *predate* the consummation of the Publishing Agreements for those works. *See* FAC, Ex. I. Thus, Plaintiff has failed entirely to plausibly allege that Defendant wrongfully prevented her from discovering any time-barred breach of contract or copyright claims before the applicable limitations period for those claims had run or how she could

not timely discover Defendant's alleged misconduct with reasonable diligence. *See Koch*, 699 F.3d at 157 (generalized allegation of failure to disclose cannot support inference that defendant prevented discovery of claim); *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 266-67 (S.D.N.Y. 2006) (finding plaintiff failed to adequately plead equitable tolling where plaintiff "utterly failed to identify in the Complaint which statements led her to believe that she could delay bringing her lawsuit, or 'how defendant "concealed facts," and further failed to adequately plead "due diligence"). Indeed, Plaintiff's own allegations betray her ability to discover the alleged misconduct with reasonable diligence. Plaintiff alleges she has relied on "constant searches" and her own family informing her that Defendant has released yet another allegedly unauthorized new book or edition. FAC ¶ 36. Further, she alleges Defendant violated the Publishing Agreements and the 2014 Settlement *immediately* thereafter given that the royalty statements she received used "unauthorized 'deferred' columns." FAC ¶ 32.

Accordingly, all claims for copyright infringement arising from conduct pre-dating January 21, 2022—three years before the filing of her complaint—are separately barred by the statute of limitations. Further, all claims for breach of contract arising before January 21, 2019—six years before the filing of her complaint—are separately barred by the statute of limitations.[11]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted in part and denied in

[11] Defendant also argues that any claim for fraud predating January 21, 2019 should also be barred by the statute of limitations. Mem. at 12-13. However, Defendant entirely fails to address that for a fraud claim the "time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." NY CPLR § 213(8); *see also Yudkin v. Evergreen Terrace 888 Corp.*, 238 A.D.3d 1201, 1202, 235 N.Y.S.3d 417, 420 (2d Dep't 2025). Defendant makes no argument whatsoever as to when Plaintiff discovered or should have discovered the unidentified fraudulent conduct. Accordingly, the Court declines to find any fraud claims separately barred by the statute of limitations given Defendant's inadequate briefing. Further, dismissal on the basis that a claim is untimely under the applicable statute of limitations "is appropriate only if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).

part. Specifically, Plaintiff's claims for breach of contract, breach of fiduciary duty, fraud and fraudulent concealment, and copyright infringement are dismissed with prejudice.[12] Defendant's motion to dismiss Plaintiff's trademark infringement claim is denied. Further, Plaintiff's request for leave to file a partial motion for summary judgment with respect to her claim for copyright infringement of *Dirty Red* is denied as moot in light of the dismissal of her copyright claim.

The Clerk of Court is respectfully requested to terminate docket entries 90 and 96.

**SO ORDERED.**

**Date: September 15, 2026**
**New York, NY**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**

[12] Plaintiff, while appearing *pro se*, has already amended her complaint four times and has specifically amended her complaint in response to Defendant's pre-motion letters concerning a previous anticipated motion to dismiss and the pending motion to dismiss, which put Plaintiff on notice of the alleged deficiencies of her claims. [ECF Nos. 64, 89]. Plaintiff has had ample opportunity to attempt to cure those deficiencies. Further, Plaintiff does not request leave to amend again. Accordingly, dismissal of her breach of contract, breach of fiduciary duty, fraud and fraudulent concealment, and copyright infringement is with prejudice. *See Felder v. United States Tennis Ass'n*, 27 F.4th 834, 848 (2d Cir. 2022) ("[W]e certainly see no error or abuse of discretion in the District Court's dismissal of Felder's complaint with prejudice, as Felder did not request leave to re-amend."); *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (summary order) (affirming denial of leave to amend where *pro se* plaintiff had already had opportunity to amend once and made no showing as to how he would remedy defects in complaint).